JENNIFER M. McMENOMY, Esq.
Nevada State Bar No. 14239
McMENOMY LAW, PLLC
100 Vine Street
Reno, Nevada 89503
Telephone: (775) 525-8850
Email: Jennifer@McMenomylaw.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN DOGBE, an individual;<br>ALBERTA DOGBE, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>THE LAKES AT LEMMON VALLEY, LLC,<br>A Nevada limited liability company.<br><br>Defendants.<br>_____ / | Case No. 3:24-cv-00283<br><br>**VERIFIED COMPLAINT<br>AND JURY DEMAND** |

Plaintiffs JOHN DOGBE and ALBERTA DOGBE, file the following complaint and allege as follows:

**PARTIES**

1.  Plaintiff JOHN DOGBE ("John") is a resident of Knightdale, North Carolina and was, at the time alleged in this Complaint, a temporary resident of Washoe County, Nevada.

2.  Plaintiff ALBERTA DOGBE ("Alberta") is a resident of Knightdale, North Carolina and was, at the time alleged in this Complaint, a temporary resident of Washoe County, Nevada.

3.  Upon information and belief, Defendant THE LAKES AT LEMMON VALLEY, L.L.C. (hereinafter the "Lakes") is a Nevada Limited Liability Company.

**VENUE AND JURISDICTION**

4.  This Court has subject matter jurisdiction over each Defendant pursuant to 28 USC §1331 and 28 USC §1343.

1

5. The Court also has supplemental jurisdiction under 28 USC § 1367(a) over the related state law claims for discrimination, breach of contract, negligent infliction of emotional distress and intentional infliction of emotional distress.

6. Venue is appropriate pursuant to 28 USC §1391(b)(2) because a substantial part of the events giving rise to the claim(s) occurred.

## GENERAL ALLEGATIONS

7. Plaintiffs John and Alberta are originally from the Republic of Ghana.

8. Plaintiffs John and Alberta self-identify as being part of the African Race.

9. On or about October 13, 2022, John and Alberta signed a lease with the Lakes for apartment #3814 located at 7711 Sky Vista Parkway, Reno, Nevada 89506 (the "Apartment"). See copy of executed lease attached hereto as **Exhibit 1**.

10. John had obtained a new job with American Assay Labs as Innovations and Technology Chemist. John also worked as a professor at the University of Nevada, Reno as a temporal Letter of Appointment.

11. Pursuant to the lease, John and Alberta agreed to rent the Apartment from November 20, 2022 to November 19, 2023.

12. John and Alberta lived in the Apartment starting on November 20, 2022.

13. During their time at the Lakes, John and Alberta had rented out the Clubhouse at the Lakes at Lemmon Valley for their guests for parties.

14. John and Alberta had never before had an issue.

15. In or around June 2023, John reserved the Clubhouse for July 1, 2023, for a party and invited his guests to attend the party.

16. Most of the guests could be identified by John and Alberta as members of the African Race.

2

17. On July 1, 2023, John, Alberta, their children and their guests assembled in the Clubhouse for their party.

18. There were approximately 25 guests at the party including John and Alberta.

19. The party was well attended and none of the guests were being unruly or disrespectful of the Lakes' property.

20. John was barbequing outside with some of the other guests at the party when an employee of the Lakes named Brianna Gragas ("Brianna") approached John and told him that all guests had to stay in the Clubhouse.

21. Despite the fact that the guests had never been required to stay inside the Clubhouse before, John and his guests endeavored to remain in the Clubhouse at Brianna's request.

22. A little while later, John was continuing to barbecue with some of the guests from the party when he was told by Brianna that none of his guests were allowed outside at all in the patio area except for him.

23. John continued to politely endeavor to barbecue having only one person at a time attend to the barbequing outdoors.

24. Another employee of the Lakes then came up to John and told him that the party would need to be shut down due to the crowd being too "large" and "loud."

25. It was observed by John, Alberta and several of their guests that the party was not too loud and was not disturbing anyone in any way.

26. Regardless, John and Alberta told their guests that the party immediately needed to cease and that they needed to move the party to another location.

27. John stopped his barbequing and removed all of the food from the barbequing and began transporting the food to someone's car.

3

28. In the meantime, upon information and belief, Brianna was yelling at the guests on their way out stating things like "What are you still doing here?" and "Weren't you asked to leave?"

29. At this, Alberta asked Brianna "Why are you treating us this way? We have been good tenants, pay our rent on time and you treat us this way?"

30. Alberta did not use any profanity whatsoever when talking to Brianna or any other employee of the Lakes during this interaction.

31. Law enforcement was not called to the Lakes at any time during the gathering.

32. The Dogbes and all of their guests attempted to comply with the staff's directives during the gathering and while the gathering was being dispersed.

33. The Dogbes and their guests went back to someone else's house and resumed their gathering without any further issue.

34. The Dogbes were hurt and confused by their party being shut down because they had witnessed other people have the same or similar parties in the Clubhouse without incident.

35. The Dogbes had also witnessed the same or similar amount of people doing the same or similar things at gatherings at the Clubhouse without incident.

36. Upon information and belief, the party size did not violate any fire or safety code.

37. On or about July 5, 2023, the Dogbes received a "Five-Day Notice to Perform Lease Condition or Quit" from the Lakes posted on their door (the "Notice"). Said Notice is attached hereto as **Exhibit 2**.

38. The Notice stated, in pertinent part, as follows:

> On Saturday, July 1, 2023, the tenants named in this notice reserved the Clubhouse Juice Bar to hold a family event on the owner's property, lack of sufficient management and crowd control with tenants and their guest (*sic*) and failure to keep guests contained inside the reserved space as agreed resulted in premature closure of the event. Following the event closure, staff was (*sic*) confronted and assaulted

4

verbally by Alberta DOGBE and a guest of the tenants' party.

39. The Notice also provided "you are not given the right to cure because the violations are not curable." *See* Exhibit 2.

40. The Notice stated that the Dogbes were required to vacate the Apartment by July 17, 2023. *See* Exhibit 2.

41. The Five-Day Notice states that "Management received a letter providing an eye-witness statement to the gravity and extent to which Alberta Dogbe verbally assaulted the company leasing agent." *See* Exhibit 2.

42. Ironically, the Notice states that "management must enforce the rules fairly and without prejudice and without fear of tenant retaliation, violence or threat."

43. Once again, Alberta did not have any violent or aggressive contact with any of the employees of the Lakes after the party was broken up on July 1, 2023 and denies that any other guest had the same.

44. The guests at the party overwhelmingly agreed that the reason the party was shut down was because of racial prejudice regarding the group.

45. The Dogbes were so fearful of being evicted, that they complied with the Notice and moved out of the Apartment by July 10, 2023.

46. The Dogbes were intimidated and distressed by the Notice.

47. The Dogbes were compliant and cooperative with all staff directives on July 1, 2023.

48. The Lakes did not return the Dogbes retained July rental payment and deposit until September 13, 2023.

49. The Lakes charged the Dogbes for 16 prorated days despite their vacation from the Apartment on July 10, 2023. The Lakes also charged the Dogbes for utilities through July 15, 2023 despite the fact that they vacated the Apartment on July 10, 2023.

5

50. The experience with the Lakes was so traumatizing that John resigned his position at American Assay Labs as the Innovations and Technology Chemist and took a lower Senior Analytical Chemist to move back to North Carolina. John also declined his teaching position at the University of Nevada, Reno for the Fall 2023 which he had planned on keeping.

51. Shortly thereafter, one of the party guests, on behalf of the Dogbes, filed a complaint against the Lakes with the Department of Housing and Urban Development ("HUD").

52. HUD closed the inquiry due to lack of jurisdiction.

53. On or about May 29, 2024, the Dogbes filed a Complaint with the Nevada Equal Rights Commission ("NERC").

54. Investigation is still pending with the NERC.

55. Pursuant to the Fair Housing Act § 1981 and § 1982 Defendant's created a hostile living environment and wrongfully evicted the Plaintiffs on the basis of their race and national origin.

56. At all times relevant to the events described herein, Defendants' employees acted within the scope of their employment as an agent, employee, and/or representative. As an agent and/or employee, they carried out discriminatory practices described herein (a) upon information, at the direction, consent, encouragement, knowledge, and ratification of the Lakes.

57. The Lakes is liable for the acts of their employees and/or agents.

58. Because of Defendant's actions and the actions of their employees, the Dogbes were unable to fully use and enjoy the Apartment despite having met their rent and lease obligations. Defendants deprived the Dogbes of full value of the Apartment by evicting them prior to their lease being up.

59. Defendant's actions and the actions of their employees have caused the Dogbes significant humiliation, embarrassment, emotional and physical distress, including, without limitation, shock, anger, frustration, panic, fear, and anxiety.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (42 USC § 1981)

60. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

61. Defendant's actions and the actions of the employees, agents, and/or staff were sufficiently pervasive and severe to create a hostile environment based on the Dogbe's race and national origin. In addition to violating their civil rights, Defendant's actions interfered with the Dogbe's right to peaceably use and enjoy the Apartment for the lease period.

62. Defendant's actions demonstrate a willful and gross disregard for the known rights of the Dogbes.

63. As a direct and proximate result of Defendant's actions and the actions of their employees, agents and/or staff, the Dogbes have been forced to retain legal counsel and have incurred attorney's fees and costs. The Dogbes are, therefore, entitled to recover their reasonable and necessary attorney's fees and costs.

### SECOND CLAIM FOR RELIEF
### (42 USC § 1982)

64. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

65. Defendant's actions and the actions of their employees, agents, and/or staff were sufficiently pervasive and severe so as to create a hostile environment based on race.

66. Defendant's actions and the actions of their employees, agents, and/or staff were sufficiently pervasive and severe so as to create a hostile environment based on race in violation of Plaintiff's rights to use and lease real property on an equal basis regardless of race under 42 USC § 1982.

67. Defendant's action and the actions of their employees, agents, and/or staff demonstrated a willful and gross disregard for the known rights of the Dogbes.

68. As a direct and proximate result of Defendant's actions and the actions of their employees, agents and/or staff, the Dogbes have been forced to retain legal counsel and have incurred attorney's fees and costs. The Dogbes are, therefore, entitled to recover their reasonable and necessary attorney's fees and costs.

## THIRD CLAIM FOR RELIEF
### (42 USC §3604(b))

69. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

70. Defendant discriminated against Plaintiffs in the terms, conditions or privileges of the rental of the Apartment to the Dogbes.

71. Defendant's actions and the actions of their employees, agents, and/or staff were sufficiently pervasive and severe so as to create a hostile environment based on race in violation of the Plaintiffs' rights, as protected by the Fair Housing Act, 42 USC §3604(b). Defendants subjected the Dogbes to different terms and conditions on the basis of their race, color, and national origin.

72. Defendant's actions and the actions of their employees, agents, and/or staff were demonstrate a willful and gross disregard for the known rights of the Dogbes.

## FOURTH CLAIM FOR RELIEF
### (42 USC § 3617)

73. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

74. Defendant's actions and the actions of their employees, agents, and/or staff were sufficiently pervasive and severe so as to create a hostile environment based on race in violation of

Plaintiffs' rights, as protected by the Fair Housing Act, 42 USC §3617. The Dogbe's right to use and enjoy the Apartment was unlawfully interfered with on the basis of their race, color and national origin.

75. Defendant's actions and the actions of their employees, agents, and/or staff demonstrate willful and gross disregard for the known rights of the Dogbes.

76. As a direct and proximate result of Defendant's actions and the actions of their employees, agents and/or staff, the Dogbes have been forced to retain legal counsel and have incurred attorney's fees and costs. The Dogbes are, therefore, entitled to recover their reasonable and necessary attorney's fees and costs.

### FIFTH CLAIM FOR RELIEF
(Unlawful Discrimination in Housing—NRS 118.120)

77. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

78. Defendants and their employees, agents, and/or staff made the Apartment unavailable to the Dogbes on the basis of race, color and national origin.

79. Defendants and their employees, agents, and/or staff discriminated against the Dogbes in the terms, conditions, and privileges of the rental of the Apartment and the provision of services and/or facilities of the Lakes on the basis of race, color and national origin.

80. Defendants and their employees, agents, and/or staff coerced, intimated, threatened, and interfered with the Dogbe's exercise and enjoyment of the Apartment.

81. Plaintiffs were injured as a result of Defendant's actions and the actions of their employees, agents, and/or staff in violation of NRS 118.100.

82. Defendant's actions and the actions of their employees, agents and/or staff were malicious, oppressive, and intentional, entitling the Dogbes to an award of exemplary and punitive damages pursuant to NRS 118.120.

9

83. As a direct and proximate result of Defendant's actions and the actions of their employees, agents and/or staff, the Dogbes have been forced to retain legal counsel and have incurred attorney's fees and costs. The Dogbes are, therefore, entitled to recover their reasonable and necessary attorney's fees and costs.

### SEVENTH CLAIM FOR RELIEF
**(Constructive Eviction—NRS 118A.390)**

84. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

1. The Lakes and/or its employees, agents or staff by and through its Notice which was unlawfully given caused a constructive eviction of the tenant. The Nevada Supreme Court has found that "a constructive eviction results from an active interference with, or disturbance of, the tenant's possession by the act of the landlord because of which the whole, or a substantial part of the premises is rendered unfit for occupancy for the purpose for which it was demised." *Medical Multiphasic Testing, Inc. v. Linnecke*, 95 Nev. 752, 755, 602 P.2d 182, 184 (1979).

2. The Lakes actively interfered with Plaintiffs' use and enjoyment of the Property by giving the Notice to the Plaintiffs.

85. The presentation of the Notice by the Lakes rendered the entire Apartment fit for occupancy for the purpose for which it was leased.

86. The Dogbes vacated the Apartment within five (5) days after the Notice was given.

87. As a direct and proximate result of Defendant's actions and the actions of their employees, agents and/or staff, the Dogbes have been forced to retain legal counsel and have incurred attorney's fees and costs. The Dogbes are, therefore, entitled to recover their reasonable and necessary attorney's fees and costs.

### SIXTH CLAIM FOR RELIEF
**(Breach of Contract)**

10

88. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

89. The Dogbes and the Lakes entered into a valid Lease agreement for rental of the Apartment.

90. The Dogbes and the Lakes agreed that the Lakes would provide the Apartment as demised and that the Dogbes would pay rent and abide by the terms of the Lease.

91. In consideration of the Lease, the Dogbes agreed to pay $1,749.00 per month. The Dogbes paid their rent on time, monthly until July 1, 2023 and were current on rent at the time of the incident.

92. The Lakes breached the Lease by serving the Notice and requiring the Dogbes to vacate the Apartment in the middle of the Lease term.

93. The Lakes further breached the Lease by retaining the rental payment and security deposit and not providing an itemization within the time required under NRS 118A.424(4).

94. Plaintiffs suffered monetary damages as a result of the Lakes' actions.

95. As a direct and proximate result of Defendant's actions and the actions of their employees, agents and/or staff, the Dogbes have been forced to retain legal counsel and have incurred attorney's fees and costs. The Dogbes are, therefore, entitled to recover their reasonable and necessary attorney's fees and costs.

## SEVENTH CLAIM FOR RELIEF
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

96. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

97. Plaintiffs and parties to the Lease with the Lakes.

98. The Lakes owed a duty of good faith and fair dealing to Plaintiffs arising from the Lease pursuant to Nevada law.

11

99. The Lakes deliberately breached the duty of good faith and fair dealing by performing in a manner that is unfaithful to the purpose of the Lease and which contravenes the intention and spirit of the Lease.

100. Plaintiffs' justifiable expectations have been denied as a result of the Lakes' breach of the covenant of good faith and fair dealing.

101. Plaintiffs suffered monetary damages as a result of the Lakes' actions.

102. As a direct and proximate result of the Lakes' actions, the Dogbes have been forced to retain legal counsel and have incurred attorney's fees and costs. The Dogbes are, therefore, entitled to recover their reasonable and necessary attorney's fees and costs.

## EIGHTH CLAIM FOR RELIEF
### (Unjust Enrichment)

103. Plaintiffs incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

104. The Lakes have received and retained benefits through Plaintiffs' justifiable reliance upon the Lease Agreement.

105. Plaintiffs paid their rent and deposit in good faith on the Lease Agreement.

106. Defendant's retention of these funds is unjust and inequitable.

107. As a direct and proximate result of the Lakes' actions, the Dogbes have been forced to retain legal counsel and have incurred attorney's fees and costs. The Dogbes are, therefore, entitled to recover their reasonable and necessary attorney's fees and costs.

## NINTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

108. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein.

109. Defendants and/or their employees, agents, and staff were extreme and outrageous.

MCMENOMY LAW, PLLC
100 Vine Street
Reno, NV 89503
Phone: (775) 525-8850

110. Defendants and/or their employees, agents, and staff's actions intentionally cause or demonstrated reckless disregard for causing Plaintiffs emotional distress.

111. As a result of Defendants' and/or their employees, agents and staff's actions, Plaintiffs suffered severe and extreme emotional distress.

112. Plaintiff's emotional distress was actually or proximately caused by Defendants' and/or their employees, agents, and staff's action.

113. As a direct and proximate result of Defendant's actions and the actions of their employees, agents and/or staff, the Dogbes have been forced to retain legal counsel and have incurred attorney's fees and costs. The Dogbes are, therefore, entitled to recover their reasonable and necessary attorney's fees and costs.

### TENTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)

114. Plaintiffs hereby incorporate all the allegations contained in the preceding paragraphs as though fully set forth herein.

115. Defendant and their staff, agents, and/or employees owed a duty of care to Plaintiffs to provide a safe dwelling unit free from discrimination and harassment.

116. Defendants and their staff, agents, and/or employees breached their duty of care to Plaintiffs and failed to provide a safe dwelling unit free from discrimination and harassment.

117. Defendants and their staff, agents, and/or employees negligently and carelessly failed to provide a safe dwelling unit free from discrimination and harassment.

118. As further direct and proximate result of the carelessness, recklessness, and negligence of Defendant, their employees, agents and/or staff, as foresaid, cause serious emotional distress to Plaintiffs by giving them the Notice and requiring them to move out under false accusations.

119. As a direct and proximate result of Defendants' negligence, Plaintiffs have sustained damages.

120. As a direct and proximate result of Defendant's actions and the actions of their employees, agents and/or staff, the Dogbes have been forced to retain legal counsel and have incurred attorney's fees and costs. The Dogbes are, therefore, entitled to recover their reasonable and necessary attorney's fees and costs.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand trial by jury in this action of all issues so triable.

DATED this 3rd day of July, 2024.

McMENOMY LAW, PLLC

By: /s/ Jennifer McMenomy
Jennifer McMenomy, Esq.
100 Vine Street
Reno, Nevada 89503

## VERIFICATION

JOHN DOGBE does hereby swear under penalty of perjury under the laws of the State of Nevada that the assertions in this verification are true:

That he is the Plaintiff in the above-entitled action; that he has read the foregoing Petition and knows the contents thereof; and that the same are trust of his own personal knowledge.

Dated: 7/2/2024

DocuSigned by:

JOHN DOGBE

15

## VERIFICATION

ALBERTA DOGBE does hereby swear under penalty of perjury under the laws of the State of Nevada that the assertions in this verification are true:

That she is the Plaintiff in the above-entitled action; that she has read the foregoing Petition and knows the contents thereof; and that the same are trust of her own personal knowledge.

Dated: 7/3/2024

*DocuSigned by:*
*Alberta Dogbe*
ALBERTA DOGBE

## Exhibit List

| | | |
|---|---|---|
| 1 | Lease Agreement | 19 |
| 2 | 5-day Notice | 2 |
| 3 | Summons to be Issued | 1 |