UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN DOGBE and ALBERTA DOGBE,<br><br>Plaintiffs<br><br>v.<br><br>THE LAKES AT LEMMON VALLEY, LLC,<br><br>Defendant | Case No.: 3:24-cv-00283-CSD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Re: ECF No. 21 |

Before the court is Defendant's motion to dismiss Plaintiffs' first amended complaint, (ECF No. 20). (ECF No. 21.) Plaintiffs opposed, (ECF No. 24), and Defendant replied. (ECF No. 25.)

After a thorough review, Defendant's motion is granted in part and denied in part. Insofar as the motion is granted, Plaintiffs are given leave to file a second amended complaint.

## I. BACKGROUND

**A. Procedural History**

On July 3, 2024, Plaintiffs filed a complaint against Defendant alleging violation of 42 U.S.C. §§ 1981 and 1982; violation of 42 U.S.C. §§ 3604(b) and 3617 of the Fair Housing Act (FHA); unlawful housing discrimination in violation of Nevada Revised Statutes (NRS) § 118.120; constructive eviction in violation of NRS 118A.390; breach of contract; breach of the implied covenant of good faith and fair dealing; unjust enrichment; intentional infliction of emotional distress (IIED); and negligent infliction of emotional distress (NIED). (*See* Compl.,

ECF No. 1.) Defendant filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5.)

Defendant's motion to dismiss the original complaint was granted in part and denied in part. (ECF No. 17.) The motion was granted for claims under 42 U.S.C. § 1981 and § 1982; 42 U.S.C. § 3604(b) and § 3617; NRS 118.120 and NRS 118A.390; breach of the implied covenant of good faith and fair dealing; unjust enrichment; IIED; and NIED. (*Id.*) Plaintiffs were granted leave to amend as to these claims except for the claim for unjust enrichment. (*Id.*) The motion was denied as to Plaintiffs' claim for breach of contract. (*Id.*)

On January 2, 2025, Plaintiffs filed a First Amended Complaint (FAC) alleging ten claims for relief arising under both Federal and State law: (1) 42 U.S.C. § 1981 and (2) § 1982; (3) 42 U.S.C. § 3604(b) and (4) § 3617; (5) NRS 118.20; (6) NRS 118A.390; (7) breach of contract; (8) breach of the implied covenant of good faith and fair dealing; (9) IIED; and (10) NIED. (*See* FAC, ECF No. 20.)

Defendant filed a motion to dismiss Plaintiffs' FAC, arguing Plaintiffs again failed to allege facts sufficient to support their claims under Rule 12(b)(6).[1] (ECF No. 21.) Defendant asserts that when the allegations in the FAC are taken as true, the only conclusion is that Plaintiffs breached the condition of their lease. (*Id.*) Plaintiffs responded, arguing the FAC remedies the deficiencies in the original complaint and that Defendant improperly uses facts not included in the complaint in the motion to dismiss. (ECF No. 24.) Defendant replied, reiterating

---

[1] Confusingly, Defendant argues that the claim for unjust enrichment should be dismissed from the FAC, (ECF No. 21 at 20-21), when there is no claim for unjust enrichment in the FAC, (*See* ECF No. 20), and the court previously dismissed the unjust enrichment claim *without* leave to amend. (ECF No. 17.) Even more confusingly, Plaintiffs respond by arguing that the FAC does properly state a claim for unjust enrichment in alternative to their breach of contract claim. (ECF No. 24 at 13.) To be clear, no claim for unjust enrichment is currently alleged in this case and Plaintiffs are not given leave to amend to add such a claim.

2

the arguments in the original motion and raising – for the first time – the issue of whether the court should consider a document supplied by Defendant as incorporated by reference into the complaint. (ECF No. 25.)

**B. Allegations in the FAC[2]**

Plaintiffs, John and Alberta Dogbe, allege they are originally from the Republic of Ghana and self-identify as being part of the African Race. (ECF No. 20 at ¶¶ 7, 8.) Plaintiffs signed a lease with Defendant for an apartment from November 20, 2022, to November 19, 2023. (*Id.* at ¶¶ 9, 11.) Plaintiffs reserved the Clubhouse[3] at Defendant's apartment complex for a party on July 1, 2023. (*Id.* at ¶ 15.) There were approximately 25 guests, inclusive of Plaintiff, and most of the guests could be identified by Plaintiffs as members of the African Race. (*Id.* at ¶¶ 16, 19.)

Plaintiffs allege Defendant did not provide John with guidelines or restrictions for the size of the party or where guests could congregate when he reserved the Clubhouse. (*Id.* at ¶¶ 20, 21.) Plaintiffs had observed similar parties at the Clubhouse where members of the white race and/or other races had congregated in a similar manner with a similar number of attendants with no issues. (*Id.* at ¶¶ 22, 25.) Plaintiffs allege the party was well attended and no guests were unruly or disrespectful. (*Id.* at ¶ 23.)

When John was barbequing outside at the patio area with guests from the party, Defendant's employee Brianna Gragas ("Brianna") approached him and told him all guests had to remain in the Clubhouse. (*Id.* at ¶ 24.) Later, Brianna told John that he was the only party attendant allowed in the patio area. (*Id.* at ¶ 27.) A different employee then came up to John and said the party would need to be shut down for being too large and loud, although Plaintiffs and

---

[2] This section presents only allegations and makes no findings of fact.

[3] Although Defendants refer to the Clubhouse as the "Juice Bar," the court will use the name Clubhouse in this order to align with the allegations in the FAC.

their guests observed that the party was not too loud or disruptive. (*Id.* at ¶¶ 29, 31.) Plaintiffs did not receive complaints from any individuals other than Defendant's employees. (*Id.* at ¶ 32.)

Based on the comments from Defendant's employees, Plaintiffs told their guests the party had to stop and move to another location. (*Id.* at ¶ 34.) While they were leaving, Brianna yelled at the guests, saying things like "What are you still doing here?" and "Weren't you asked to leave?" in a manner meant to be intimidating and harassing. (*Id.* at ¶¶ 36, 37.) Alberta Dogbe then asked Brianna why they were being treated in such a way in a way that was not aggressive or used profanity. (*Id.* at ¶¶ 39, 40.)

Plaintiffs then continued the party at someone else's house. (*Id.* at ¶ 43.) Plaintiffs allege they were hurt and confused by the party being shut down because people of the white and/or other race had held similar gatherings in the Clubhouse without incident. (*Id.* at ¶ 44.) Plaintiffs allege that the party size did not violate any fire or safety code, or any policy and procedure established by Defendant. (*Id.* at ¶¶ 45, 46.)

At the same time as Plaintiff's party, several children and other residents were yelling and screaming in the pool area, which is adjacent to the Clubhouse. (*Id.* at ¶ 33.) These individuals were of the white race and/or other races and were not asked to vacate the pool area or told to stop making noise. (*Id.* at ¶¶ 33, 38.)

On July 5, 2023, Plaintiffs received a "Five-Day Notice to Perform Lease Condition or Quit" ("the Notice") from Defendant. (*Id.* at ¶ 47; ECF No. 20-2.) The Notice asserted there was a lack of sufficient management and crowd control at the party at the clubhouse and a failure to keep guests contained inside the reserved space that resulted in premature closure of the event. (ECF No. 20 at ¶ 48; ECF No. 20-2.) The Notice further stated that following closure of the event, Defendant's staff were confronted and verbally assaulted by Alberta Dogbe and a guest of

Plaintiffs. (*Id.*) The Notice stated that the violations were not curable, and Plaintiffs were required to vacate their apartment by July 17, 2023. (ECF No. 20 at ¶ ¶ 49, 50; ECF No. 20-2.)

Plaintiffs allege that neither Alberta nor any other guests had violent or aggressive contact with any of Defendant's employees after the party was broken up on July 1, 2023. (ECF No. 20 at ¶ 54.) Plaintiffs allege that the alleged verbal assault on Defendant's staff was "concocted by Brianna and other [Defendant's] staff" to justify ending the party. (*Id.* at ¶ 57.) Plaintiffs also allege that "aggressive" and "assaultive" undertones were attributed to Alberta's speech based on her race and the policies and procedures for the Clubhouse were applied unfairly by Defendant due to Plaintiff's race. (*Id.* at ¶ ¶ 58, 59.) However, Plaintiffs complied with the Notice because they were very fearful of being evicted and moved out on July 10, 2023. (*Id.* at ¶ 61.) As a result of this traumatizing experience, John resigned his position in Nevada and took a lower-level position to move back to North Carolina. (*Id.* at ¶ 66.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) contemplates the filing of a motion to dismiss for the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). In reviewing the complaint under this standard, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleadings in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). This does not apply, however, to "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id*. (citation omitted). "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id*. at 679.

Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has found that at a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 678.

The complaint need not contain detailed factual allegations, but it must contain more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678. It must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id*. at 679 (citation omitted).  Allegations can be deemed "implausible" if there are "obvious alternative explanation[s]" for the facts alleged. *Id*. at 682.

     A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissed as frivolous); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

### III. DISCUSSION

**A. Incorporation by Reference**

     Before evaluating the sufficiency of Plaintiffs' claims, the court will address Defendant's request for the court to rely on a document outlining the reservation rules and guidelines for the Clubhouse which was not attached to the complaint. (ECF Nos. 25, 25-1).

     Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citing *Warren v. Fox Family Worldwide,* 328 F.3d 1136, 1145 n.5 (9th Cir. 2003)). However, the incorporation by reference doctrine allows a court to "consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 998, 1002 (9th Cir. 2018) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.

1 | 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem.*
2 | *Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006)).

"[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). When a complaint references and necessarily relies on a document, the court "may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder*, 450 F.3d at 448 (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

First, the court notes that it is inappropriate to raise an argument for the first time in a reply brief. *See Cedano-Viera v. Ashcroft,* 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) (citing *Thompson v. Commissioner,* 631 F.2d 642, 649 (9th Cir. 1980)); *Bazuye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)). Defendant did not attach this document to the motion to dismiss or include any argument in favor of including the document in the initial motion. (*See* ECF No. 21.) Rather, Defendant improperly waited until the reply motion to attach the document and request that it be deemed incorporated by reference.

Further, the incorporation by reference doctrine itself acknowledges the impropriety of raising such an argument in a reply by including the requirement that "no party questions the authenticity of the copy *attached to the 12(b)(6) motion*." *Daniels-Hall*, 629 F.3d at 998 (emphasis added). This is logical, as the opposing party ordinarily does not have an opportunity to respond to the reply to raise any questions as to the authenticity of such a document such as the one here, where not even an authenticating declaration is provided. Therefore, the court will not rely on the exhibit provided by Defendant in the reply and will now turn to the merits of Defendant's motion.

## B. Federal Claims

### 1. 42 U.S.C. § 1981 and § 1982

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981. "All citizens of the United States shall have the same right … as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." U.S.C. § 1982. Sections 1981 and 1982 prohibit private as well as governmental action. *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436 (1968); *General Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 387 (1982).

A claim under section 1981 or 1982 must allege intentional discrimination on the basis of race. *General Bldg. Contractors Ass'n*, 458 U.S. at 389. That is to say, the plaintiff must allege facts plausibly suggesting that "race was a but-for cause of its injury." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 333, 336, 340-41 (2020) (rejecting the "motivating factor" test applied to Title VII and FHA claims, "typically at summary judgment, when the plaintiff relies on indirect proof of discrimination").

Defendant acknowledges that Plaintiffs belong to a protected class and that Plaintiffs' contractual relationship with Defendant is protected under § 1981. (ECF No. 21 at 8.) However, Defendant argues that Plaintiffs' allegations show there were legitimate, nondiscriminatory reasons for Defendant's actions. (*Id.*)

Previously, the court found that Plaintiff failed to allege facts showing they were treated differently because of their race. (ECF No. 17 at 5-6.) Here, the FAC does include factual allegations supporting the claims that Plaintiffs were discriminated against because of their race.

The FAC alleges that Plaintiffs had witnessed other people of the white and/or other race hold the same or similar gatherings in the Clubhouse without incident. Specifically, these other people had congregated near the grill without issue and had similar numbers of guests at Clubhouse events. Plaintiffs further allege that simultaneous to their party, several children and residents of the white and or/other race were "yelling and screaming" at the pool area were not asked to leave or quiet down. Finally, Plaintiffs allege that Defendant has not evicted another tenant of the white and/or other race due to a party in the Clubhouse.

Thus, Plaintiffs have sufficiently alleged facts that plausibly suggest that "but-for" their race, the party would not have been shut down nor would they have been evicted. *Comcast Corp.*, 589 U.S. at 333, 336, 340-41. Defendant's motion to dismiss is, therefore, denied as to Plaintiffs' claims under 42 U.S.C. § 1981 and § 1982.

**2. 42 U.S.C. § 3604(b)**

Plaintiffs sue under two provisions of the FHA: 42 U.S.C. § 3604(b) and 42 U.S.C. § 3617. The court will first examine Section 3604(b). Under the FHA, "it is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601.

42 U.S.C. § 3604(b) makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race … or national origin," among other classifications. Section 3604(b) creates a "broad and inclusive compass" entitled to "generous construction." *McGary v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir. 2004) (citation and quotation marks omitted).

Section 3604(b) prohibits both "intentional discrimination," where "an invidious discriminatory purpose [is the] motivating factor" behind the defendant's conduct, known as "disparate treatment" discrimination, as well as "disparate impact" discrimination, or conduct that "create[s] a discriminatory effect upon a protected class or perpetuate[s] housing segregation without any concomitant legitimate reason." *Ave. 6E Investments, LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 502-04 (9th Cir. 2016) (citations omitted).

### a. Disparate Impact

A disparate impact discrimination theory is cognizable when based on a public or private practice or policy, and it does not apply to complaints based on a defendant's alleged single decision. *See Texas Dept. of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015); *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997).

In the FAC, Plaintiffs allege that "Defendant and/or its employees, agents, and/or staff applied the policies and procedures of the Clubhouse, *if any*, in a way that was unfair against the Dogbes because of their race and/or national origin." (ECF No. 20 at ¶ 103 (emphasis added).) Plaintiffs further allege the policies and procedures regarding eviction were applied unfairly based on Plaintiff's race and/or national origin. (*Id.* at ¶ 104.) However, Plaintiffs do not allege – either generally or specifically – what these policies or procedures were.

In fact, Plaintiffs cast doubt over whether there were any policies or procedures relating to the Clubhouse at all. Thus, Plaintiffs do not meet the pleading standard for a disparate impact discrimination theory relating to the Clubhouse or eviction policies procedures under section 3604(b), and Defendant's motion is granted as to the disparate impact portion of the claim. However, as Plaintiffs could amend the complaint to state a colorable disparate impact claim, leave to amend is granted.

### b. Disparate Treatment

For disparate treatment cases of discrimination, the plaintiff may rely on direct or circumstantial evidence to prove that "the discriminatory purpose" was a "motivating factor" behind the conduct. *Ave. 6E Investments*, 818 F.3d at 504 (citations omitted). "[D]iscrimination against a member of a protected class in the interpretation and enforcement of HOA rules can violate § 3604(b) of the FHA." *Id*. (citing *Bloch v. Frischholz*, 587 F.3d 771, 779-81 (7th Cir. 2009) (en banc)).

While Plaintiffs need not plead a *prima facie* case of discrimination under *McDonnell Douglas*' burden shifting analysis, they must include facts sufficient to plausibly assert a claim for relief under section 3604(b) to satisfy *Iqbal* and *Twombly*. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Maduka v. Sunrise Hospital*, 375 F.3d 909 (9th Cir. 2004).

To the extent Plaintiffs attempt to assert a hostile housing environment claim, the Ninth Circuit has recognized that "§ 3604(b) of the FHA prohibits the creation of a hostile housing environment based on" one of the protected categories. *Morris v. West Hayden Estates First Addition Homeowners Ass'n, Inc.*, 104 F.4th 1128, 1146 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1127, 220 L. Ed. 2d 423 (2025) (citation omitted). A plaintiff asserting such a claim must show he was subject to: (1) severe or pervasive harassment (2) that was based on a protected characteristic … and (3) that the defendant is responsible for the resulting hostile housing environment." *Id*. at 1147 (citation omitted).

Previously, the court dismissed the claim under this section because it was "based on a single incident where they were required to cease a party and then were served a notice of eviction, *none of which is factually tied to their race*." (ECF No. 17 at 8 (emphasis added).) Defendant cites this line from the court's order and argues Plaintiffs failed to support this claim

again because it is based on a single incident. (ECF No. 21 at 12.) However, the FAC does factually tie the incident and notice of eviction to Plaintiffs' race. Where they are factually tied to the Plaintiff's race, the Ninth Circuit has found that eviction notices constitute severe harassment sufficient to support a § 3604(b) disparate treatment claim. *Id.* at 1140 (citing *Harris v. Itzhaki*, 183 F.3d 1043, 1052 (9th Cir. 1999)).

Here, Plaintiffs have alleged they were given an eviction notice after having their party shut down and that when individuals of the white and/or other races held similar parties, they were not shut down or given eviction notices. This sufficiently alleges that Plaintiffs suffered severe harassment because of their race by Defendant and/or its employees. *Morris*, 104 F.4th at 1146. Thus, Defendant's motion to dismiss is denied as to Plaintiff's disparate treatment claim under § 3604(b).

### 3. 42 U.S.C. § 3617

The court now turns to Plaintiffs' claim under section 3617 of the FHA. Section 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercise or enjoyed … any right granted or protected" by sections 3603-3606 of the FHA. "Section 3617 reach[es] all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws." *Morris*, 104 F.4th at 1142 (citation and quotation marks omitted).

A violation of Section 3617 "can involve a situation where no discriminatory housing practice may have occurred at all." *Id*. (citation and quotation marks omitted). By way of example: "if a landlord rents to a white tenant but then threatens to evict him upon learning that he is married to a black woman, the landlord has plainly violated § 3617, whether he actually evicts the tenant or not." *Id*. (citation and quotation marks omitted). "At its core, the FHA

guarantees tenants and homeowners a right to take and enjoy possession of a home free from discrimination based on a protected characteristic[.]" *Id*. at 1143 (citation omitted)

Previously, the court dismissed Plaintiffs' claim under section 3617 because Plaintiffs did not plausibly allege that Defendant interfered with their right to enjoy their apartment free from racial discrimination. In the FAC, as explained in the previous sections, Plaintiffs add factual allegations that support a conclusion that Defendant broke up the party and issued an eviction notice because of Plaintiffs' race. Thus, Defendant's motion to dismiss this claim is denied.

**C. State Law Claims**

    **1. NRS 118.120**

Plaintiffs allege that Defendant discriminated against and made the apartment unavailable to Plaintiffs on the basis of race, color, and national origin in violation of NRS 118.000 and NRS 118.120. (ECF No. 20 at 15-16.)

Nevada's fair housing law, set forth in Nevada Revised Statutes 118.010-118.120, mirrors the FHA. For the same reasons that Plaintiffs stated a plausible claim for relief under the federal FHA, Plaintiffs state a colorable claim for relief under Nevada's fair housing law. Thus, Defendant's motion to dismiss is denied for this claim.

    **2. NRS 118A.390**

Plaintiffs next allege Defendants violated NRS 118A.390 by constructively evicting Plaintiff from the apartment. (ECF No. 20 at 17-18.)

A tenant may recover, among other remedies, actual damages if a "landlord unlawfully removes the tenant from the premises or excludes the tenant by blocking or attempting to block the tenant's entry upon the premises, willfully interrupts or causes or permits the interruption of any essential item or service required by the rental agreement." NRS 118A.390(1).

1 　　　　As explained above, Plaintiffs do allege colorable claims for illegal discrimination under
2 the FHA. Consequently, Plaintiffs have provided a sufficient factual basis to support a claim that
3 Defendant unlawfully issued an eviction notice which blocked Plaintiffs from continuing to live
4 in their apartment through the end of the lease term. Thus, Defendant's motion to dismiss is
5 denied as to Plaintiffs' claim under NRS 118A.390.

6 　　　　**3. Breach of Contract**

7 　　　　A claim for breach of contract must allege: "(1) the existence of a valid contract, (2) that
8 the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused the
9 plaintiff damages." *Iliescu, Trustee of John Iliescu, Jr. and Sonnia Iliescu 1992 Family Trust v.*
10 *Regional Transp. Comm. of Washoe County*, 522 P.3d 453, 458, 138 Nev. Adv. Op. 72 (Nev.
11 App. 2022) (citations omitted).

12 　　　　Previously, the court held that although Plaintiffs had not sufficiently alleged their lease
13 was terminated because of their race or national origin, they had sufficiently alleged a claim for
14 breach of contract. Here, Plaintiffs did not edit or change the language for the breach of contract
15 claim between the initial complaint and the FAC. (*Compare* ECF No. 1 at 10-11 *with* ECF No.
16 20 at 18-19.) Therefore, the court again finds that Plaintiffs have sufficiently alleged a breach of
17 contract claim and Defendant's motion to dismiss this claim is denied.

18 　　　　**4. Breach of the Implied Covenant of Good Faith and Fair Dealing**

19 　　　　Nevada law implies a covenant of good faith and fair dealing in every contract. *Zookin v.*
20 *CSAA General Insurance Co.*, No. 2:24-cv-00914-GMN-MDC, 2024 WL 4581553, at *2 (D.
21 Nev. Oct. 25, 2024) (citing *Hilton Hotels v. Butch Lewis Productions*, 808 P.2d 919, 922-23, 107
22 Nev. 226, 233-34 (1991)). "When one party performs a contract in a manner that is unfaithful to
23 the purpose of the contract and the justified expectations of the other party are thus denied,

damages may be awarded against the party who does not act in good faith." *Hilton Hotels*, 808 P.2d at 923. "This cause of action is different from one for breach of contract because it requires literal compliance with the terms of the contract." *Stebbins v. Geico Ins. Agency*, No. 2:18-cv-00590, 2019 WL 281281, at *2 (D. Nev. Jan. 22, 2019). "It is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Id.* (quotation omitted).

Here, the breach of contract claim itself does not allege that Defendant or its agents acted based on Plaintiffs' race. (*See* ECF No. 20 at 18-19.) However, the breach of the implied covenant of good faith and fair dealing claim alleges that Defendant did not receive any formal complaints about the size or noise levels of the party from those not employed by Defendant but rather "concocted" the story about Alberta's alleged confrontation to enable the eviction of Plaintiffs. The FAC further alleges that Defendant has not evicted another tenant of the white and/or other race based on the tenant hosting a party in the Clubhouse that was too large or loud. Thus, the FAC alleges conduct distinct from that alleged in the breach of contract claim and alleges factually how Defendant was unfaithful to the purpose of the lease. Consequently, Defendant's motion to dismiss the breach of the implied covenant of good faith and fair dealing is denied.

**5. IIED**

A claim for IIED requires the Plaintiff to plead: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882, 886, 115 Nev. 372, 378 (1999) (citation and quotation marks omitted).

16

Previously, the court dismissed the IIED claim for failure to allege extreme or outrageous conduct to plausibly assert the claim. (ECF No. 17 at 12.) The FAC provides additional allegations to support that the conduct was because of Plaintiffs' race, which can undoubtedly cause extreme emotional distress. However, Plaintiffs do not elaborate whatsoever on their emotional distress other than to state that it was severe and extreme. Thus, Plaintiffs have not sufficiently alleged a claim for IIED because the FAC merely concludes, without explaining or giving supporting facts, that Plaintiffs suffered severe or extreme emotional distress. However, because the FAC could be amended to sufficiently state a colorable claim, Plaintiffs are granted leave to amend this claim.

**6. NIED**

A plaintiff asserting a direct theory of NIED, as opposed to bystander NIED claim, must allege: (1) defendant owed a duty of care to plaintiff; (2) defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injuries; and (4) plaintiff suffered serious emotional distress. *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175, 124 Nev. 213, 217 (2008); *Olivero v. Lowe*, 995 P.2d 1023, 116 Nev. 395 (Nev. 2000); *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477, 111 Nev. 735, 748 (1995).

Plaintiff argues this claim is sufficiently pled because they established that Defendant both owed a duty of care and breached that duty. (ECF No. 24 at 14-15.) However, Plaintiffs point to statements in the complaint that merely recite the elements necessary to allege a negligence claim.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at

679. Here, there are no factual allegations to establish what duty of care was owed or why it was owed. There are likewise no factual allegations to explain how that duty of care was breached. Thus, Plaintiffs have failed to allege a colorable claim for NIED and Defendant's motion to dismiss is granted as to this claim. However, the complaint could be amended to state a colorable claim and Plaintiffs are therefore granted leave to amend as to this claim.

## IV. CONCLUSION

Defendant's motion to dismiss (ECF No. 21) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the following claims: disparate impact under 42 U.S.C. § 3604(b); IIED; and NIED. The motion is **DENIED** as to the following claims: 42 U.S.C. § 1981 and § 1982; disparate treatment under 42 U.S.C. § 3604(b); 42 U.S.C. § 3617; NRS 118.120 and NRS 118A.390; breach of contract; and breach of the implied covenant of good faith and fair dealing.

Plaintiffs are granted leave to amend as to all claims for which the motion is granted.

Plaintiffs have **30 DAYS** from the date of this Order to file an amended complaint correcting the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiffs shall clearly title the amended pleading as "SECOND AMENDED COMPLAINT."

Dated: May 12, 2025

_____
Craig S. Denney
United States Magistrate Judge